**UNITED STATES DISTRICT COURT**　　　　**EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| PAMELA DUBIER, AS TRUSTEE OF THE | § | |
| PAMELA JOY DUBIER 2011 REVOCABLE | § | |
| TRUST, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:21-CV-415 |
| | § | |
| TRIANGLE CAPITAL PROPERTIES, LLC, | § | |
| and ROYAL TEXAS, LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Royal Texas, LLC's ("Royal") Motion for Summary Judgment (#66).  Plaintiff Pamela Dubier, as Trustee of the Pamela Joy Dubier 2011 Revocable Trust ("Dubier") filed a response in opposition (#67), and Royal filed a reply (#68).  Having considered the motion, the submissions of the parties, the record, and the applicable law, the court is of the opinion that Royal's motion should be denied.

I.　　Background

This case arises from a lease agreement concerning a commercial property located at 2200 Gulfway Drive in Port Arthur, Texas (the "Property"), which was previously operated as a Church's Chicken franchise.  On April 26, 2016, Store Investment Corporation ("Store"), the original lessor, executed a Lease Agreement (the "Lease") for the Property with Defendant Triangle Capital Properties, LLC ("Triangle"), as the lessee.  That same day, Defendant Royal Texas, LLC ("Royal"), executed an Unconditional Guaranty of Payment and Performance (the

"Guaranty Agreement"), guaranteeing Triangle's obligations under the Lease.  The Lease's initial expiration date was June 13, 2032.

In August 2017, over one year after Store and Triangle executed the Lease, Hurricane Harvey severely damaged the Property, rendering it unusable and commercially inoperable. Despite this damage, Triangle continued to fulfill several of its obligations under the Lease, including submitting rent payments, maintaining insurance coverage, and paying property taxes. Triangle did not, however, repair the damage to the Property.

On November 27, 2018, Store and Dubier executed a Purchase and Sale Agreement (the "Purchase and Sale Agreement") conveying the Property to Dubier as Trustee of the Pamela Joy Dubier 2011 Revocable Trust, Amended May 22, 2006 (the "Trust").  The following month, Store and Dubier also executed an Assignment and Assumption of Lease and Rents and Guaranty (the "Assignment"), which transferred to Dubier as Trustee of the Trust "all of [Store's] estate, right, title and interest in and to the Lease and the Guaranty[.]"   After Dubier became the lessor in December 2018, Triangle continued paying rent for over a year but never repaired the Property. Then, in a letter dated March 30, 2020, Steve Neuroth ("Neuroth"), the Chief Financial Officer of Royal, notified Dubier that Triangle would not be submitting its rent payment for April 2020, citing the economic repercussions of the COVID-19 pandemic.  Dubier later sent Neuroth a Notice of Default dated June 19, 2020, and a Demand for Payment dated July 1, 2020, but she received no subsequent payments.  To date, Triangle has not paid rent since April 2020 and has not repaired the Property.[1]

---

[1] Royal retroactively tendered a payment for Triangle's April 2020 rent.  Neither Triangle nor Royal has tendered any subsequent payments.

In July 2020, Dubier filed a small claims lawsuit in Jefferson County, Texas, to recover the rent payments that Triangle owed for May 2020 and June 2020.  That lawsuit was subsequently dismissed.  Following Triangle's continued refusal to pay rent or repair the Property, Dubier filed the present lawsuit on August 9, 2021, alleging that Triangle had materially breached the Lease by ceasing to pay rent since May 2020 and failing to repair the Property following Hurricane Harvey.  Dubier also asserted a claim against Royal, contending that Royal had materially breached the Guaranty Agreement by failing to compensate Dubier for Triangle's missed rent payments, despite receiving notice of Triangle's default.  Triangle and Royal answered, denying that they had materially breached the Lease or the Guaranty Agreement, respectively, and asserting a number of defenses, including, *inter alia*, that the Guaranty Agreement was not properly assigned to Dubier.[2]

In the present motion, Royal first asserts that the Guaranty Agreement restricts its assignment to "a lender."  Royal argues that, because neither Dubier nor the Trust is a "lender," the Guaranty Agreement was not properly assigned to Dubier, and Dubier's claim against Royal for breach of the Guaranty Agreement must accordingly be dismissed.  In response, Dubier contends that the Guaranty Agreement does not limit its assignability to only a lender.  In the alternative, Dubier claims that the Trust is a lender.

---

[2] In its previous Amended Memorandum and Order (#55), the court granted partial summary judgment on Dubier's rent and repair claims against Triangle and reserved certain issues for trial. Specifically, the court reserved the issue of the amount of damages that Dubier is owed on her rent claim. The court likewise reserved the issue of whether Dubier was damaged by Triangle's failure to repair the Property (and if Dubier was damaged, to what extent).

II.    <u>Analysis</u>

A.    <u>Summary Judgment Standard</u>

A party may move for summary judgment without regard to whether the movant is a claimant or a defending party.  *See Union Pac. R.R. Co. v. Palestine*, 41 F.4th 696, 703 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 579 (2023); *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 380 (5th Cir. 2019); *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010).  Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Union Pac. R.R. Co.*, 41 F.4th at 703; *United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Anderson*, 9 F.4th 328, 331 (5th Cir. 2021); *Smith v. Harris County*, 956 F.3d 311, 316 (5th Cir. 2020); *Parrish*, 917 F.3d at 378; *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022); *Goldring v. United States*, 15 F.4th 639, 644-45 (5th Cir. 2021); *Playa Vista Conroe v. Ins. Co. of the W.*, 989 F.3d 411, 416-17 (5th Cir. 2021); *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019).

"A fact issue is 'material' if its resolution could affect the outcome of the action." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015) (quoting *Burrell*

*v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)); *see MDK Sociedad De Responsabilidad Limitada*, 25 F.4th at 368; *Lexon Ins. Co., Inc. v. Fed. Deposit Ins. Corp.*, 7 F.4th 315, 321 (5th Cir. 2021); *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020). "Factual disputes that are irrelevant or unnecessary will not be counted." *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *accord Valencia v. Davis*, 836 F. App'x 292, 296 (5th Cir. 2020); *see Dyer*, 964 F.3d at 379; *Parrish*, 917 F.3d at 378.   "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Gerhart v. Barnes*, 724 F. App'x 316, 321 (5th Cir. 2018) (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)); *accord Johnson v. City of San Antonio*, No. 22-50196, 2023 WL 3019686, at *6 n.7 (5th Cir. Apr. 20, 2023); *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019).   Thus, a genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hefren*, 820 F.3d at 771; *accord MDK Sociedad De Responsabilidad Limitada*, 25 F.4th at 368; *Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, 7 F.4th 301, 309 (5th Cir. 2021); *Dyer*, 964 F.3d at 379; *Tiblier*, 743 F.3d at 1007.  The moving party, however, "need not negate the elements of the nonmovant's case." *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014); *see Savoy v. Kroger Co.*, 848 F. App'x 158, 160 (5th Cir. 2021).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to demonstrate the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322

n.3; *see Beard v. Banks*, 548 U.S. 521, 529 (2006) (quoting FED. R. CIV. P. 56(e)); *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023); *MDK Sociedad De Responsabilidad Limitada*, 25 F.4th at 368; *Clark v. CertainTeed Salaried Pension Plan*, 860 F. App'x 337, 340-41 (5th Cir. 2021); *Acadian Diagnostic Lab'ys, L.L.C. v. Quality Toxicology, L.L.C.*, 965 F.3d 404, 410 (5th Cir. 2020).  The court "should review the record as a whole."  *Black v. Pan Am. Lab'ys, LLC*, 646 F.3d 254, 273 (5th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)); *see Hacienda Recs., L.P. v. Ramos*, 718 F. App'x 223, 234 (5th Cir. 2018); *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014).  The evidence is construed "in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)); *accord Lexon Ins. Co., Inc.*, 7 F.4th at 321; *Geovera Specialty Ins. Co. v. Odoms*, 836 F. App'x 197, 200 (5th Cir. 2020) (quoting *Little*, 37 F.3d at 1075).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial.  *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *Lyons*, 964 F.3d at 302; *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 560 (5th Cir. 2019); *Tiblier*, 743 F.3d at 1007; *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013).  "[W]here the nonmoving party fails to establish 'the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' no genuine issue of material fact can exist."  *Goode v. Greenstream Int'l, L.L.C.*, 751 F. App'x 518, 521 (5th Cir. 2018) (quoting *Nichols v. Enterasys Networks, Inc.*, 595 F.3d 185, 188 (5th Cir. 2007)); *see Phillips v. Sanofi U.S. Servs. (In re*

6

*Taxotere (Docetaxel) Prods. Liab. Litig.)*, 994 F.3d 704, 710 (5th Cir. 2021); *Apache Corp.*, 626 F.3d at 793.  In such a situation, "'[a] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial' and 'mandates the entry of summary judgment' for the moving party." *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018) (quoting *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008)); *accord Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023); *Stingley v. Watson Quality Ford*, 836 F. App'x 286, 288 (5th Cir. 2020).

     B.     <u>Summary Judgment—Local Rule CV-56(b)</u>

     As a threshold matter, Royal asserts in its reply that Dubier's response fails to comply with Local Rule CV-56(b) because it does not include a "response to [Royal's] Statement of Undisputed Material Facts."  Local Rule CV-56(b) provides in relevant part:  "Any response to a motion for summary judgment must include:  (1) a response to the statement of issues; and (2) a response to the 'Statement of Undisputed Material Facts.'"  Importantly, "[c]ourts have broad discretion in interpreting and applying their own local rules adopted to promote efficiency in the court." *United States v. Moreno*, 857 F.3d 723, 726 n.1 (5th Cir. 2017) (quoting *In re Adams*, 734 F.2d 1094, 1102 (5th Cir. 1984)); *accord Charles v. K-Pats., Inc.*, 849 F. App'x 448, 450 (5th Cir. 2021) (determining that the district court "acted within its 'considerable latitude in applying [its] own rules' when it excused [a summary judgment] motion's non-compliance" (quoting *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1488 (5th Cir. 1990))); *Webb v. Morella*, 457 F. App'x 448, 452 (5th Cir. 2012) (recognizing that "a district court's discretionary authority to formulate and enforce local rules for the orderly and expeditious handling of cases is quite broad").

Royal cites *Van Tiem v. First American Home Warranty Corp*. for the proposition that, pursuant to Local Rule CV-7(d), "[a] party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by [the] movant and has no evidence to offer in opposition to the motion." No. 1:18-CV-458, 2020 WL 6255381, at *4 (E.D. Tex. Aug. 5, 2020) (quoting Local Rule CV-7(d)), *aff'd*, No. 20-40707, 2021 WL 4537689 (5th Cir. Oct. 4, 2021). *Van Tiem*, however, is distinguishable from the case at bar because the plaintiff in *Van Tiem* filed no response to the defendant's motion for summary judgment, despite obtaining two extensions of time to do so. *Id.* at *2. As a result, the court applied Local Rule CV-7(d) to "accept[], as true, the facts provided by [the defendant] and supported by its evidence." *Id.* at *9. Here, in contrast, Dubier filed a timely response in opposition to Royal's motion. While Dubier's response lacks a discrete section responding to Royal's Statement of Undisputed Material Facts, the court can discern without difficulty which aspects of Royal's Statement of Undisputed Material Facts Dubier disputes. Thus, the court exercises its "broad discretion" in interpreting and applying its local rules to overlook Dubier's omission and declines to apply a presumption that Royal's articulation of the facts is uncontroverted. *See Berry v. Williams*, No. 20-599-SDD-RLB, 2022 WL 2073079, at *5 (M.D. La. May 23, 2022) (disregarding the plaintiff's "failure to strictly comply with" the United States District Court for the Middle District of Louisiana's Local Rule 56, which required the plaintiff "to submit an opposing statement of material facts," because "the facts at issue [were] clearly presented in the plaintiff's opposition"), *adopted by* No. 20-599-SDD-RLB, 2022 WL 2070884 (M.D. La. June 8, 2022).

C.    Breach of the Guaranty Agreement

Under Texas law,[3] a party seeking to recover on a claim for breach of a guaranty agreement must show:

(1) the existence and ownership of the guaranty contract;

(2) the terms of the underlying contract by the holder;

(3) the occurrence of the conditions upon which liability is based; and

(4) the guarantor's failure or refusal to perform the promise.

*Senior Care Living VI, LLC v. Preston Hollow Cap., LLC*, ___ S.W.3d ___, No. 01-21-00602-CV, 2024 WL 2138654, at *18 (Tex. App.—Houston [1st Dist.] May 14, 2024, no pet. h.) (citing *Chahadeh v. Jacinto Med. Grp., P.A.*, 519 S.W.3d 242, 246 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Lee v. Martin Marietta Materials Sw., Ltd.*, 141 S.W.3d 719, 720 (Tex. App.—San Antonio 2004, no pet.)); *see Harrison Co., L.L.C. v. A-Z Wholesalers, Inc.*, 44 F.4th 342, 347 (5th Cir. 2022) (quoting *Haggard v. Bank of Ozarks Inc.*, 668 F.3d 196, 199 (5th Cir. 2012)).  Here, Royal appears to assert that it is entitled to summary judgment because Dubier cannot establish the first element—the existence and ownership of the guaranty contract—because the Guaranty Agreement was not properly assigned to Dubier.  Specifically, Royal contends that the Guaranty Agreement provides that it may be assigned only to "a lender," and thus it was not properly assigned to Dubier, as neither she nor the Trust is a lender.  Dubier argues in response

---

[3] Paragraph 10 of the Guaranty Agreement states:  "This Guaranty is delivered in the State of Texas, and it is the intent of Guarantor and Lessor that this Guaranty shall be deemed to be a contract made under and governed by the internal laws of the State of Texas, without regard to its principles of conflicts of law."  The parties agree that Texas law governs the court's interpretation of the Guaranty Agreement.

that the Guaranty Agreement does not restrict its assignability to only a lender.  In the alternative, Dubier claims that she is a lender.

D.     Interpreting the Guaranty Agreement

1.     Principles of Contract Construction

"Courts construe unambiguous guaranty agreements as any other contract."  *Moayedi v. Interstate 35/Chisam Rd. L.P.*, 438 S.W.3d 1, 7 (Tex. 2014).  An unambiguous contract must be interpreted by the court as a matter of law.  *Nettye Engler Energy, LP v. BlueStone Nat. Res. II, LLC*, 639 S.W.3d 682, 690 (Tex. 2022); *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)); *see Kinsale Ins. Co. v. Flyin' Diesel Performance & Offroad, L.L.C.*, 99 F.4th 821, 827 (5th Cir. 2024) (quoting *Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 257 (Tex. 2023)).  "When the controversy can be resolved by proper construction of an unambiguous document, rendition of summary judgment is appropriate."  *Cmty. Health Sys. Pro. Servs. Corp.*, 525 S.W.3d at 681 (citing *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 862 (Tex. 2000)).

"Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense."  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005) (citing *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)); *accord Kinsale Ins. Co.*, 99 F.4th at 826 (quoting *Burlington Res. Oil & Gas Co. LP v. Tex. Crude Energy, LLC*, 573 S.W.3d 198, 203 (Tex. 2019)); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017).  The court's primary concern when construing a contract is to give effect to the written expression of the parties' intent.  *Sanchez Oil*

10

*& Gas Corp.*, 7 F.4th at 310 n.12 (quoting *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994)); *Nassar*, 508 S.W.3d at 257-58; *Hartman Income REIT Mgmt. v. Summer Energy, LLC*, ___ S.W.3d ___, No. 14-22-00469-CV, 2023 WL 8263647, at *2 (Tex. App.—Houston [14th Dist.] Nov. 30, 2023, no pet.) (citing *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 888 (Tex. 2019)).

Under the "four corners rule," the intention of the parties is to be gathered from the instrument as a whole. *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 842 (5th Cir. 2012); *see Apache Corp. v. Apollo Expl., LLC*, 670 S.W.3d 319, 336 (Tex. 2023) ("[I]t is not the actual intent of the parties that governs, but the actual intent of the parties *as expressed in the instrument as a whole*[.]" (quoting *Luckel v. White*, 819 S.W.2d 459, 462 (Tex. 1991))); *Northland Indus., Inc. v. Kouba*, 620 S.W.3d 411, 415 (Tex. 2020). The "court is bound to read all parts of a contract together to ascertain the agreement of the parties." *Sanchez Oil & Gas Corp.*, 7 F.4th at 310 n.12 (quoting *Forbau*, 876 S.W.2d at 133); *see Muzquiz v. Para Todos, Inc.*, 624 S.W.3d 263, 272 (Tex. App.—El Paso 2021, pet. denied). The court should "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*, 68 F.4th 206, 216 (5th Cir. 2023) (quoting *Coker*, 650 S.W.2d at 393); *see King v. Baylor Univ.*, 46 F.4th 344, 360 (5th Cir. 2022) (noting that courts must strive to "give meaning to every sentence, clause, and word to avoid rendering any portion inoperative" (quoting *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998))). In the same vein, "[a]n interpretation that gives each word meaning is preferable to one that renders one surplusage." *Stewart v. Metro. Lloyds Ins. Co. of Tex.*, 855 F. App'x 198, 200 (5th Cir. 2021) (quoting *U.S.*

11

*Metals, Inc. v. Liberty Mut. Grp., Inc.*, 490 S.W.3d 20, 24 (Tex. 2015)).  "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."  *Nat'l Oilwell Varco, L.P.*, 68 F.4th at 216 (quoting *Coker*, 650 S.W.2d at 393); *accord Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015).  This is merely an application of the long-established rule in Texas that "[n]o one phrase, sentence, or section of a contract should be isolated from its setting and considered apart from the other provisions."  *Mosaic Baybrook One, L.P.*, 674 S.W.3d at 257 (quoting *Pathfinder Oil & Gas, Inc.*, 574 S.W.3d at 889).

"Whether a contract is ambiguous is a question of law for the court to decide."  *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 211 (5th Cir. 2016) (quoting *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)); *Pathfinder Oil & Gas, Inc.*, 574 S.W.3d at 889 (quoting *Coker*, 650 S.W.2d at 394).  The determination of the ambiguity of a contract "is a legal question decided by examining the entire contract in light of the circumstances present when the parties entered the contract."  *State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex. 1998) (citing *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821-23 (Tex. 1997)); *see Compass Bank v. Nacim*, 459 S.W.3d 95, 107 (Tex. App.—El Paso 2015, no pet.) (citing *Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 746 (Tex. 2003)).

Under Texas law, a contract is ambiguous if, after applying the established rules of interpretation, the written instrument "remains 'reasonably susceptible to more than one meaning.'"  *Endeavor Energy Res., L.P. v. Energen Res. Corp.*, 615 S.W.3d 144, 155 (Tex. 2020) (quoting *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996));

*see Singleton v. Elephant Ins. Co.*, 953 F.3d 334, 337 (5th Cir. 2020) ("[A]mbiguity exists only if the contract language is susceptible to two or more reasonable interpretations." (quoting *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003))); *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017); *Cortez v. Chapa*, No. 13-19-00193-CV, 2021 WL 161398, at *6 (Tex. App.—Corpus Christi-Edinburg Jan. 14, 2021, no pet.) (requiring a "genuine uncertainty" as to which of two meanings is proper (quoting *Treadway v. Shanks*, 110 S.W.3d 1, 6 (Tex. App.—Dallas 2000), *aff'd*, 110 S.W.3d 444 (Tex. 2003))).  In this regard, "[l]anguage should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated." *Leighton v. Rebeles*, 399 S.W.3d 721, 725 (Tex. App.—Dallas 2013) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987)). An ambiguity does not arise, however, merely because the parties advance conflicting interpretations of the contract. *ACE Am. Ins. Co.*, 699 F.3d at 842; *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 219 (Tex. 2022); *Nassar*, 508 S.W.3d at 258.  In order for an ambiguity to exist, both interpretations must be reasonable. *See Nelson v. Comm'r of Internal Revenue*, 17 F.4th 556, 561-62 (5th Cir. 2021) (quoting *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)); *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel, L.L.C.*, 620 F.3d 558, 562 (5th Cir. 2010); *Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 520.

When construing a guaranty agreement, the court bears in mind that "[i]n Texas, a guarantor is a 'favorite' of the law." *Westlake Petrochemicals, L.L.C. v. United Polychem, Inc.*, 688 F.3d 232, 245 (5th Cir. 2012); *Jamshed v. McLane Express Inc.*, 449 S.W.3d 871, 877 (Tex. App.—El Paso 2014, no pet.) (citing *Moffitt v. DSC Fin. Corp.*, 797 S.W.2d 661, 666 (Tex. App.—Dallas 1990, writ denied)).  Thus, "[i]f there is uncertainty about the meaning of a

guaranty contract and two reasonable constructions may be made, the reviewing court will apply the construction most favorable to the guarantor." *84 Lumber Co., L.P. v. Powers*, 393 S.W.3d 299, 307 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); s*ee Moayedi*, 438 S.W.3d at 7 ("If the meaning of a guaranty agreement is uncertain, 'its terms should be given a construction which is most favorable to the guarantor.'" (quoting *Coker*, 650 S.W.2d at 394 n.1)); *see also WBCMT 2007 C33 Off. 9720, L.L.C. v. NNN Realty Advisors, Inc.*, 844 F.3d 473, 478 (5th Cir. 2016) ("[W]here the interpretation of a guaranty is in dispute, the guarantor 'is entitled to have his agreement strictly construed,' and '[w]here uncertainty exists as to the meaning of a contract of guaranty, its terms should be given a construction which is most favorable to the guarantor.'" (quoting *Coker*, 650 S.W.2d at 394 n.1)); *Senior Care Living VI, LLC*, 2024 WL 2138654, at *18. Additionally, under the rule of *strictissimi juris*, "a guarantor may require the terms of his guaranty be strictly followed and the agreement not be extended beyond its precise terms by construction or implication." *Rainier Income Fund I, Ltd. v. Gans*, 501 S.W.3d 617, 622 (Tex. App.—Dallas 2016, pet. denied) (citing *Abel v. Alexander Oil Co.*, 474 S.W.3d 795, 800 (Tex. App.—Houston [14th Dist.] 2014, no pet.)); *Wasserberg v. Flooring Servs. of Tex., LLC*, 376 S.W.3d 202, 206 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see Westlake Petrochemicals, L.L.C.*, 688 F.3d at 245 ("[A] guarantor's obligation should not be extended by implication beyond the written terms of the guaranty, and any ambiguity must be construed in favor of the guarantor.").

Royal argues that the rules articulated above require the court to construe the Guaranty Agreement in its favor. In particular, Royal contends that a guaranty agreement must be construed in favor of the guarantor not only when the contract is "ambiguous," but also when there is any

"uncertainty" about its meaning.[4]  Although Royal claims that "[t]he word used by Texas law for decades is 'uncertain,' not 'ambiguous,'" Texas courts have, on the contrary, also utilized the term "ambiguous" when discussing the construction of guaranty agreements.  *See Prentice v. Frost Bank*, No. 03-15-00506-CV, 2017 WL 2729896, at *4 n.19 (Tex. App.—Austin June 23, 2017, pet. denied) ("If a guaranty is ambiguous and susceptible to two reasonable interpretations, courts should use the interpretation that favors the guarantor." (quoting *Pham v. Mongiello*, 58 S.W.3d 284, 288 (Tex. App.—Austin 2001, pet. denied))); *Preston Ridge Fin. Servs. Corp. v. Tyler*, 796 S.W.2d 772, 780 (Tex. App.—Dallas 1990, writ denied) ("We agree that if the guaranty is *ambiguous*, rendering it susceptible to two reasonable interpretations, the one favorable to the guarantor, the other unfavorable, the interpretation will be given which favors the guarantor. However, this Court agrees with the parties that this guaranty is *unambiguous*; consequently, this rule is inapplicable in this case." (citation omitted)).  Indeed, the Texas Supreme Court often uses the terms "ambiguous" and "uncertain" as synonyms, frequently defining an "ambiguous"

---

[4] In support of this argument, Royal asserts that the following excerpt from *Moayedi* demonstrates that the rule requiring construction in favor of the guarantor is not dependent upon ambiguity:  "Courts construe unambiguous guaranty agreements as any other contract.  If the meaning of a guaranty agreement is uncertain, 'its terms should be given a construction which is most favorable to the guarantor.'  The interpretation of an unambiguous contract, however, is a question of law for the court."  438 S.W.3d at 7 (quoting *Coker*, 650 S.W.2d at 394 n.1).  In the court's estimation, Royal's example undermines its very argument.  Indeed, this court understands *Moayedi* as juxtaposing an "uncertain" guaranty agreement in one sentence with an "unambiguous" contract in the next.  *See id.*  To put it another way, *Moayedi* equates an "uncertain" guaranty agreement with an "ambiguous" one and refers to the two terms interchangeably.

Indeed, the Texas Supreme Court went on to state in no uncertain terms that "[w]hen parties disagree over the meaning of an *unambiguous* contract, we determine the parties' intent by examining the entire agreement."  *Id.* (emphasis added).  In other words, *Moayedi* provides that, even where a guaranty agreement's meaning might be *uncertain*—such as where the parties advance two conflicting interpretations of the contract—but the language is nevertheless unambiguous, the court must apply ordinary principles of contract interpretation to construe the agreement, rather than construing it in favor of the guarantor. *See id.*; *see also Apache Corp.*, 670 S.W.3d at 336 (explaining that, under the rules of contract interpretation, "it is not the actual intent of the parties that governs, but the actual intent of the parties *as expressed in the instrument as a whole*").

contract as one whose meaning is "uncertain." *See Rosetta Res. Operating, LP*, 645 S.W.3d at 219 ("An ambiguity exists when a contract's 'meaning is uncertain and doubtful or it is reasonably susceptible to more than one interpretation.'" (quoting *In re Davenport*, 522 S.W.3d 452, 456 (Tex. 2017) (orig. proceeding))); *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 874 (Tex. 2018); *FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P.*, 426 S.W.3d 59, 63 (Tex. 2014) ("An ambiguous contract, however, has a doubtful or uncertain meaning or is reasonably susceptible to multiple interpretations[.]"); *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex. 1980) ("[A] contract is ambiguous only when the application of the applicable rules of interpretation to the instrument leave it genuinely uncertain which one of the two meanings is the proper meaning."); *see also Ambiguity*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Doubtfulness or uncertainty of meaning or intention . . . .").

Moreover, the Texas Supreme Court has unequivocally instructed that "[c]ourts construe unambiguous guaranty agreements as any other contract." *Moayedi*, 438 S.W.3d at 7. Therefore, even if the court were to accept Royal's assertion that the meaning of the Guaranty Agreement is uncertain but not ambiguous, the court must nevertheless apply general principles of contract construction to interpret the Guaranty Agreement. Indeed, multiple courts have rejected other guarantors' arguments that unambiguous guaranty agreements should be construed in their favor. *See Riverstone CLA Partners, Ltd. v. Child.'s Learning Adventure USA, LLC*, No. CV H-19-2822, 2020 WL 1896708, at *2 (S.D. Tex. Feb. 24, 2020) (opining that the rule that "guaranty agreements are to be strictly construed in favor of the guarantor . . . 'only applies when ordinary rules of contract construction render the parties' obligations uncertain or ambiguous'" (quoting *JMW Partners, L.P. v. Northstar Bank of Tex.*, No. 2-09-167-CV, 2010 WL 2331399, at *4 (Tex.

App.—Fort Worth June 10, 2010, no pet.))); *Ranch 620 Retail Partners, Ltd. v. Sodja*, No. H-19-2825, 2019 WL 7372488, at *3 n.3 (S.D. Tex. Dec. 31, 2019) (explaining that, because guaranty agreements are strictly construed in favor of the guarantor "only where the guaranty is ambiguous," the court would construe the unambiguous guaranty agreement "as a matter of law and [would] enforce it according to its terms"); *Kelley v. Kelley*, No. 14-14-00519-CV, 2015 WL 3799693, at *3 (Tex. App.—Houston [14th Dist.] June 18, 2015, no pet.) (dismissing the guarantor's argument that the agreement "should be construed in favor of the guarantor" as "inapplicable" because the guaranty agreement was "not ambiguous"). Thus, the court declines to construe the Guaranty Agreement in Royal's favor absent a determination that the agreement is ambiguous.

Royal's related assertion that the rule of *strictissimi juris* similarly obligates the court to construe any "uncertainty" in a guaranty agreement in favor of the guarantor is likewise unavailing. In fact, Texas courts have clarified that the rule of *strictissimi juris* applies only after the terms of a guaranty agreement have been determined. *See McKnight v. Va. Mirror Co.*, 463 S.W.2d 428, 430 (Tex. 1971) ("*After the terms of a guaranty agreement have been ascertained*, the rule of strictissimi juris applies, meaning that the guarantor is entitled to have his agreement strictly construed and that it may not be extended by construction or implication beyond the precise terms of his contract." (emphasis added)); *Jallan v. PNA Invs., LLC*, No. 14-21-00460-CV, 2023 WL 5316877, at *4 (Tex. App.—Houston [14th Dist.] Aug. 18, 2023, no pet.) ("According to the rule of strictissimi juris, a guarantor may require that the terms of his guaranty be strictly followed, and that the agreement not be extended beyond its precise terms by construction or implication. Before we can apply the rule of strictissimi juris, however, we must

examine the terms of the guaranty based on the language of the contract." (citations omitted));
*Kelley*, 2015 WL 3799693, at *3 (stating that the rule of *strictissimi juris*, which "applies after the
terms of the guaranty have been ascertained," "does not abrogate the touchstone of contract
interpretation, which is to seek the true intent of the parties who executed the contract");
*Wasserberg*, 376 S.W.3d at 206 ("Before we can apply the rule of *strictissimi juris*, however, we
must examine the terms of the guaranty based on the language of the contract." (citing *Fed.
Deposit Ins. Corp. v. Attayi*, 745 S.W.2d 939, 943-44 (Tex. App.—Houston [1st Dist.] 1988, no
writ))); *see also Citgo Petroleum Corp. v. Fid. & Deposit Co. of Md.*, No. H-16-0952, 2016 WL
6476997, at *4 (S.D. Tex. Nov. 1, 2016) ("The principle of *strictissimi juris* applies only to the
extension of a surety by construction or implication; it is not a canon of construction."). 
Accordingly, the doctrine of *strictissimi juris* will play no role in the court's determination of
whether the Guaranty Agreement, by its own terms, limits its assignment to only a lender.

2.      The Guaranty Agreement Does Not Limit Assignment to "a Lender"

Paragraph 13 of the Guaranty Agreement provides:

Guarantor[5] acknowledges and agrees that (a) Lessor[6] may collaterally assign all of
its right, title and interest under the Lease and this Guaranty to a lender; and (b)
upon the exercise of any lender's remedies set forth in related loan documents, all
of the rights, powers and privileges of Lessor shall be deemed the rights, powers
and privileges of such lender and such lender shall be entitled to exercise all of the
rights and remedies of "Lessor" under this Guaranty, the Lease and such loan
documents.  Guarantor hereby consents to, and no further consent by Guarantor
shall be required for, any further assignment of rights of Lessor hereunder or in
connection with any transfer by Lessor.  All notices, certificates, reports or other
information required to be delivered to Lessor under this Guaranty shall be

---

[5] The Guaranty Agreement defines "Guarantor" as "Royal Texas LLC, a Delaware limited liability company."

[6] The Guaranty Agreement defines "Lessor" as "Store Investment Corporation, a Delaware corporation (together with its successors and assigns under the Lease . . . )."

delivered simultaneously to such lender.  Notwithstanding any provision herein to the contrary, this Guaranty shall not be deemed to create any obligation of or liability for such lender.  Guarantor intends that such lender shall be an intended third party beneficiary of this Guaranty but without any corresponding responsibility, liability or obligation to Guarantor.

Here, the court concludes that the Guaranty Agreement is unambiguous, rendering the rule that ambiguities must be construed in favor of the guarantor inapplicable.  Rather, applying the plain, ordinary, and generally accepted meanings of the terms in the Guaranty Agreement and considering the instrument as a whole, the court is of the opinion that the Guaranty Agreement does not restrict its assignment to only a lender.  For one matter, the Guaranty Agreement utilizes discretionary language in stating that "Guarantor acknowledges and agrees that (a) Lessor *may* collaterally assign all of its right, title and interest under the Lease and this Guaranty to a lender" (emphasis added).  The mere fact that the Guarantor "acknowledges and agrees" that the Lessor "*may*" assign the Lease and Guaranty Agreement to a lender does not necessarily lead to the conclusion that the Lessor *may* assign the Lease and Guaranty Agreement *only* to a lender.  The court agrees with Dubier that this language merely indicates that a lender is "one acceptable assignee."

Moreover, beyond the lack of mandatory language limiting assignment to only a lender, ¶ 13 contains a sweeping phrase signaling the Guarantor's broad agreement to the Lessor's unfettered ability to assign the Guaranty Agreement:  "Guarantor hereby consents to, and no further consent by Guarantor shall be required for, any further assignment of rights of Lessor hereunder or in connection with any transfer by Lessor."  This sentence lacks any reference to a lender and, in addition, employs expansive language indicating the Guarantor's consent to "any further assignment" of the Lessor's rights "in connection with *any transfer* by Lessor" (emphasis

19

added).  As such, this sentence necessarily encompasses the Lessor's assignment of the Guaranty

Agreement to non-lender assignees and memorializes the Guarantor's consent to such a "transfer"

of the Lessor's rights under the Guaranty Agreement.[7]

Interpreting this sentence as referring to other types of assignments or transfers beyond the

previously described collateral assignment to a lender is in keeping with the court's obligation to

construe a contract in a manner that "gives each word meaning," as such a construction "is

preferable to [an interpretation] that renders one surplusage."  *Stewart*, 855 F. App'x at 200.

Indeed, if this sentence were construed as merely reaffirming the Guarantor's assent to the

Lessor's ability to assign the Guaranty Agreement to a lender, it would be a superfluous reiteration

of the preceding sentence's statement that "Guarantor acknowledges and agrees" that the Lessor

"may collaterally assign . . . to a lender."  Such an interpretation of redundance would render this

sentence a disfavored surplusage.  Instead, an interpretation that gives every phrase of the contract

meaning understands ¶ 13's mentioning "any further assignment of rights of Lessor hereunder or

in connection with any transfer by Lessor" as referencing a different type of assignment or transfer

---

[7] The court notes that its conclusion derives no support from Dubier's argument that other sections of the Guaranty Agreement—including the introductory paragraph and ¶ 14—reference the Lessor's "successors and assigns" without making any mention of a lender.  Dubier's assertion ignores the principle that "a specific contract provision controls over a general one."  *Mosaic Baybrook One, L.P.*, 674 S.W.3d at 257 (quoting *Pathfinder Oil & Gas, Inc.*, 574 S.W.3d at 889); *see Cedar Contracting, Inc. v. Hernandez*, No. 03-11-00327-CV, 2014 WL 709560, at *6 (Tex. App.—Austin Feb. 21, 2014, pet. denied) ("It is clear, however, that any reference to assigns, must be 'construed in the light of the context of the rest of the contract as written.'  It is generally understood that, notwithstanding a reference to assigns, other terms in the contract may show . . . that assent to assignment is limited or that there is no assent." (quoting *Penick v. Eddleman*, 291 S.W. 194, 194 (Tex. Comm'n App. 1927))).  Here, ¶ 13, as demonstrated by both its title—"13. Assignment"—and its contents, specifically articulates the parties' intent regarding assignment of the Guaranty Agreement.  As a result, any general references to "successors and assigns" in other provisions of the Guaranty Agreement must necessarily be informed by any specifications or limitations on assignment set out in ¶ 13, the provision governing assignment. Nonetheless, the court is unpersuaded by Royal's assertion that ¶ 13 contains any restrictions limiting assignment to only a lender.

than the collateral assignment to a lender to which the Guarantor had already agreed in the prior sentence.

Royal maintains that construing ¶ 13 to permit assignment to anyone other than a lender would render clause (b) of the paragraph ineffectual.  Such is not the case.  Rather, clause (b) becomes effective in the instance that the Guaranty Agreement is "collaterally assign[ed] . . . to a lender" in accordance with clause (a).  A "collateral assignment" is an "assignment of rents" that grants a security interest in the assignee.  *In re Lack's Stores, Inc.*, No. 10-60149, 2012 WL 3043093, at *7-8 (Bankr. S.D. Tex. July 25, 2012); *see Marhaba Partners Ltd. P'ship v. Kindron Holdings, LLC*, 457 S.W.3d 208, 219 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (describing a collateral assignment as a "transaction by which the [property] is delivered by the debtor and accepted by the creditor, but legal title does not pass to the secured party." (quoting *Coffey v. Singer Asset Fin. Co., L.L.C.*, 223 S.W.3d 559, 566 (Tex. App.—Dallas 2007, no pet.))); *Coffey*, 223 S.W.3d at 566 ("[T]o 'collaterally assign' means to assign property as collateral security for a loan." (citing *Assignment*, BLACK'S LAW DICTIONARY (8th ed. 2004))).  Importantly, an assignee of a collateral assignment cannot "collect[] rent until he '[takes] affirmative action . . . to perfect an interest in the payment.'"  *In re Lack's Stores, Inc.*, 2012 WL 3043093, at *8 (quoting *In re Spears*, 352 B.R. 83, 90 (Bankr. N.D. Tex. 2006); *see In re Amaravathi Ltd. P'ship*, 416 B.R. 618, 629 (Bankr. S.D. Tex. 2009) ("An important caveat with 'collateral' assignments is that the lender must take some affirmative action to 'activate' its rights to the rents." (citing *Taylor v. Brennan*, 621 S.W.2d 592, 594 (Tex. 1981))).  Thus, clause (b)'s reference to the lender's exercise "of any lender's remedies set forth in related loan documents"

21

merely references the necessary "affirmative action" that a lender must take to perfect its interest in a collateral assignment.

In contrast to collateral assignments, "[a]n assignment generally means the transfer or setting over of property, or some right or interest.  In an absolute assignment, the assignor loses all control over the property assigned and can do nothing to defeat the rights of the assignee." *Vertical N. Am., Inc. v. Vopak Terminal Deer Park, Inc.*, No. 14-15-01088-CV, 2017 WL 4197027, at *3 n.2 (Tex. App.—Houston [14th Dist.] Sept. 21, 2017, pet. denied) (citing *Coffey*, 223 S.W.3d at 570; *Univ. of Tex. Med. Branch at Galveston v. Allan*, 777 S.W.2d 450, 453 (Tex. App.—Houston [14th Dist.] 1989, no writ)); *see Sanders Oil & Gas, Ltd. v. Big Lake Kay Constr., Inc.*, 554 S.W.3d 79, 91 (Tex. App.—El Paso 2018, no pet.); *Marhaba Partners Ltd. P'ship*, 457 S.W.3d at 219; 49 AM. JUR. 2D *Landlord & Tenant* § 752 (2024) (distinguishing "an assignment of the lease" from "[t]he assignment of rent to accrue," which does not "effect a transfer of the lessor's reversionary interest in the property").  Notably, immediately following clauses (a) and (b)'s discussion of the Lessor's ability to "collaterally assign all of its right, title and interest under the Lease and this Guaranty to a lender," ¶ 13 states in more general terms that "Guarantor hereby consents to, and no further consent by Guarantor shall be required for, any further assignment of rights of Lessor hereunder or in connection with any transfer by Lessor." Whereas clauses (a) and (b) specifically reference "a lender" and "collateral[] assign[ment]," the subsequent sentence contains no such language and instead speaks broadly of the Guarantor's consent to "any further assignment" and "any transfer."[8]  Thus, this general sentence in ¶ 13

---

[8] Neither party offers an interpretation of "further assignment."  The court is of the opinion that the only reasonable interpretation of this phrase is as a reference to any assignment of the Guaranty Agreement besides the aforementioned possibility of collateral assignment to a lender.  Such an

encompasses the sort of "absolute assignment" discussed above, where the Lessor assigns all of its interests in the Guaranty Agreement to the assignee—in other words, the type of assignment that Dubier argues that she received.  Accordingly, the assignment of the Guaranty Agreement to a non-lender does not, as Royal argues, render clause (b) "unworkable"; instead, clause (b)'s application is merely contingent upon a collateral assignment to a lender under clause (a), which is but one possible type of assignment that is permissible under ¶ 13.  In other words, clause (b) is applicable only in the event that the Guaranty Agreement is assigned to a lender, as a lender that receives a collateral assignment, unlike assignees that receive absolute assignments, must take additional steps—such as "the exercise of any lender's remedies set forth in related loan documents"—in order to perfect its interest in the assignment.

Royal further asserts that interpreting ¶ 13 of the Guaranty Agreement to permit assignment to other assignees besides lenders requires "re-writ[ing]" the paragraph and improperly

---

interpretation considers "further assignment" as meaning either "an additional type of assignment" or an assignment "to a greater degree or extent" than a collateral assignment.  *See Further*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/further (last visited June 3, 2024) (defining "further," in relevant part, as "more, extra, or additional"); *Further*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/further (last visited June 3, 2024) (defining "further" as meaning, *inter alia*, "to a greater degree or extent," "in addition," or "going or extending beyond").  The court reaches this conclusion because the alternative—construing "further assignment" to reference a hypothetical successive assignment from a lender to a subsequent assignee—would be illogical.  There is no plausible explanation why the Guaranty Agreement would provide that "no further consent by [Royal] shall be required for" an assignment that occurs only after the Guaranty Agreement has first been assigned to a lender.  This is particularly true in light of the fact that Royal has no right to consent to the assignment to a lender, either, as ¶ 13 states that "Guarantor acknowledges and agrees" that the Lessor may collaterally assign the Guaranty Agreement to a lender.  The court is accordingly unconvinced that interpreting "further assignment" as referencing a successive assignment from a lender to a subsequent assignee would be "reasonable," particularly when the paragraph is devoid of any language demonstrating the parties' intention to restrict the contract's assignment solely to a lender.  In short, the court determines that the only reasonable reading of this sentence in ¶ 13 is as a statement of Royal's consent to any "further assignment" that the Lessor might make as an alternative to the previously described collateral assignment to a lender.

inserting language that is not present.[9]  The court disagrees.  On the contrary, construing ¶ 13 as

allowing assignment to non-lenders requires no alteration to the language of the contract as

written.  The paragraph merely mentions collateral assignment to a lender as one possibility and

contains no restrictions or limitations on other assignments.  Indeed, the paragraph goes on to state

that "no further consent" from Royal is required for "any further assignment" of the Lessor's

rights "hereunder or in connection with any transfer by Lessor."  As Royal itself points out,

"[c]ourts will not rewrite agreements to insert provisions parties could have included or to imply

restraints for which they have not bargained." *ExxonMobil Corp. v. Elec. Reliability Servs., Inc.*,

868 F.3d 408, 415 (5th Cir. 2017) (quoting *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640,

646 (Tex. 1996)); *Devon Energy Prod. Co., L.P. v. Sheppard*, 668 S.W.3d 332, 343 n.41 (Tex.

2023).  Although Royal cites this canon of construction in an effort to undermine Dubier's

position, it is Royal's argument that is frustrated by this rule.  The Guaranty Agreement, as

written, contains no restrictions on assignment, and the court refuses to read in such a limitation

that was neither bargained for by the parties nor included in the language of the contract.

---

[9] Royal's reply includes an example of how, in its view, Dubier's proposed construction of ¶ 13 would require substantial revisions to the language of the paragraph in order to provide for assignment to non-lenders.  The salient portions of Royal's example of such revisions include:

> Guarantor acknowledges and agrees that (a) Lessor may collaterally assign all of its right, title and interest under the Lease and this Guaranty to [anyone, including] a lender; and (b) upon the exercise of any [assignee's or] lender's remedies set forth in [any] related loan documents, all of the rights, powers and privileges of Lessor shall be deemed the rights, powers and privileges of such [assignee or] lender and such [assignee or] lender shall be entitled to exercise all of the rights and remedies of "Lessor" under this Guaranty, the Lease and such loan documents.  Guarantor hereby consents to, and no further consent by Guarantor shall be required for, any further assignment of rights of Lessor hereunder or in connection with any transfer by Lessor [to a non-lender assignee].

In reaching this determination, the court is guided by the principle that "the presumption or general rule under Texas law . . . is that all contracts are freely assignable." *Intertek Asset Integrity Mgmt., Inc. v. Dirksen*, No. 12-20-00060-CV, 2021 WL 1047055, at *4 (Tex. App.—Tyler Mar. 18, 2021, no pet.) (quoting *In re FH Partners, L.L.C.*, 335 S.W.3d 752, 761 (Tex. App.—Austin 2011, orig. proceeding)); *see Rampick v. ZDS Holdings, LLC*, No. 03-16-00054-CV, 2016 WL 3677511, at *1 (Tex. App.—Austin July 8, 2016, no pet.) ("The general rule in Texas is that all contracts are freely assignable unless the contract expressly provides otherwise."). In fact, "Texas law has long been said to be quite 'liberal' in favoring assignment." *Intertek Asset Integrity Mgmt., Inc.*, 2021 WL 1047055, at *4 (quoting *In re FH Partners, L.L.C.*, 335 S.W.3d at 763); *see Visual Edge IT, Inc. v. Vaughan*, No. 4:20-CV-04220, 2022 WL 9392564, at *3 (S.D. Tex. Oct. 13, 2022) ("Texas law presumes contracts are freely assignable." (citing *Dittman v. Model Baking Co.*, 271 S.W. 75, 77 (Tex. Civ. App. 1925))).

This presumption of freedom of assignability extends to guaranty agreements. *See McLane Foodservice, Inc. v. Table Rock Rests., LLC*, No. W-11-CA-111, 2012 WL 12898574, at *2 (W.D. Tex. Aug. 23, 2012) (explaining that, as a general matter, "all contracts are assignable," and "[a] guaranty is a contract and is evaluated as any other contract" (citing *Crowell v. Bexar County*, 351 S.W.3d 114, 117 (Tex. App.—San Antonio 2011, no pet.); *Cloughly v. NBC Bank-Seguin, N.A.*, 773 S.W.2d 652, 655 (Tex. App.—San Antonio 1989, writ denied))), *amended in part sub nom. McLane Foodservice, Inc. v. Table Rock Rests., Inc.*, No. CV W-11-CA-111, 2012 WL 12898545 (W.D. Tex. Nov. 16, 2012); *Rampick*, 2016 WL 3677511, at *1 (concluding that a guaranty agreement executed between the guarantor and a lender was assignable where it provided that its references to "Lender" "include[d] [the Lender's] successors

25

and assigns" and the agreement contained "no provisions . . . expressly prohibiting assignment"); *see also Miller v. Pawnee Leasing Corp.*, No. 01-18-00429-CV, 2020 WL 477214, at *7-9 (Tex. App.—Houston [1st Dist.] Jan. 30, 2020, no pet.) (affirming the trial court's grant of summary judgment to the assignee on its claim against the guarantor for breach of the guaranty agreement).

Nevertheless, "parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy." *In re Hughes*, 513 S.W.3d 28, 32 (Tex. App.—San Antonio 2016, pet. denied) (quoting *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 & n.11 (Tex. 2004)).  Thus, parties may agree to include anti-assignment clauses or limitations on assignment in their contracts, and such clauses are generally "enforceable unless rendered ineffective by a statute." *Id.* (citing *Reef v. Mills Novelty Co.*, 89 S.W.2d 210, 211 (Tex. Comm'n App. 1936)); *see 54 Broad., Inc. v. Lin Television of Tex., L.P.*, No. A-08-CA-030-SS, 2008 WL 7836303, at *5 (W.D. Tex. Dec. 3, 2008) (concluding that an option agreement "contain[ed] a clear restriction on assignability in the language of the contract" where "[t]he plain language" provided that the contract may be assigned to "any third party that is not an affiliate of [the defendant]"); *Trimble v. OneWest Bank*, No. 14-16-00641-CV, 2017 WL 3666519, at *3 (Tex. App.—Houston [14th Dist.] Aug. 24, 2017, pet. denied) (upholding the trial court's enforcement of an anti-assignment clause stating that the borrower "may not assign any rights or obligations under the Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary").

In the present case, as explained above, the Guaranty Agreement contains no language controverting the presumption of freedom of assignment.  The references to "a lender" in ¶ 13 are permissive, rather than restrictive, and the paragraph further recognizes the Guarantor's

comprehensive consent to "any further assignment of rights of Lessor hereunder or in connection with any transfer by Lessor."  As a result, Royal's argument that the Guaranty Agreement limits its assignment to only a lender is unavailing.  The court concludes that the Guaranty Agreement could properly be assigned to Dubier as Trustee of the Trust.[10]

III.    Conclusion

In accordance with the foregoing, Royal's Motion for Summary Judgment (#66) is DENIED.  There exist genuine disputes of material fact with respect to Dubier's claim of breach of the guaranty agreement.  Dubier, therefore, may proceed to trial on her claim against Royal.

SIGNED at Beaumont, Texas, this 5th day of June, 2024.


MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

---

[10] Because the court determines that the Guaranty Agreement does not preclude assignment to non-lenders, the court does not reach Dubier's alternative argument that the Trust is a lender.

27